WILLIAM STEVENSON, and T. L. WOODRUFF, surviving Executor of A. D. WOODRUFF, deceased, v. JOHN BLACK.

S. L. Howell executed to S. Whitall six bonds, for two thousand dollars each, payable annually, and a mortgage to secure payment thereof on a part of Hog Island, Delaware county, Pennsylvania. After receiving payment of the *first* bond, Whitall assigned and delivered the *second* bond to W. Stevenson, the *third* and *fourth* to the executors of A. D. Woodruff, and the *fifth* and *sixth*, together with the mortgage, to J. Black; who caused a judgment to be entered up against Howell on one of the bonds, in the common pleas of Delaware county, and an execution to be issued thereon, by virtue of which the mortgaged premises were levied on and exposed to sale by the sheriff, subject, among others, to the following condition: "The above described property is sold, subject to the payment of a mortgage from S. L. Howell to S. Whitall, dated 22d March, 1817, and recorded in Delaware county, in Mortgage book D, page 27," &c. After Black, the plaintiff, bid one dollar for the premises, the sheriff, at the instance of Woodruff, added to the condition these words: "*And the several bonds secured by the said mortgage.*" The premises were struck off to Black at his bid, and he signed the conditions, protesting, however, against the alteration of the conditions, and declaring he would not pay the bonds. This addition to the conditions of sale created no new contract to bind the purchaser personally to pay the bonds held by Stevenson and Woodruff; and their bill, seeking to charge him personally, was dismissed.

The sheriff is bound to sell according to law, and the exigency of his writ; he is not justified in imposing terms on the purchaser different from those imposed by the law. If he undertakes, by any conditions of sale, to vary the relative position of parties, and create liabilities which the law does not impose, he exceeds his authority, and the purchaser is not bound.

On general principles, the purchaser of an equity of redemption is not personally liable for the amount of the mortgage debt; by the purchase and sale the liability is not changed as between the mortgagor and mortgagee; the obligor is still liable to the obligee on his bond, and the obligee or his assignee cannot transfer the personal liability to the purchaser.

As between the mortgagor and the purchaser of a simple equity of redemp-

tion, where the mortgage money constitutes, in fact, a part of the consideration of the purchase; the mortgagor has a right to be indemnified by the purchaser, against all personal liability on the bond.

The uniform language of a court of equity is, that where the purchaser (of an equity of redemption) is in possession and receives the rents and profits, there is raised upon his conscience, independently of any contract, an obligation to indemnify the vendor against the personal liability to pay the mortgage money.

By a mortgagee, or assignee holding one of the bonds secured by a mortgage, becoming the purchaser of the equity of redemption, that part of the mortgage debt due to himself on the bond he holds, is extinguished.

It is a general rule, that where there is a bond and mortgage, the assignment of the bond operates as an assignment of the mortgage: the bond is the principal, and the mortgage is the incident.

Where a mortgagee assigns one of the bonds secured by the mortgage, retaining the mortgage himself; the assignee becomes equitably interested in the mortgage to the amount of his debt or bond, and the holder of the mortgage a trustee for the assignee of the bond, *pro tanto.*

But the assignee of the bond has not any claim against the mortgagee, personally, growing out of the transfer of the bond; his claim is upon the mortgage or the estate bound by the mortgage, and that claim remains, no matter in whose hands the estate may be.

The assignee of the mortgage stands, *quoad,* in the shoes of the mortgagee; his rights and liabilities are the same, and not different.

IT appears from the pleadings and evidence in this case, that on the 22d of March, 1817, Samuel L. Howell, of Gloucester county, executed to Samuel Whitall, of the same place, six several bonds, conditioned for the payment of two thousand dollars each, with interest from the 25th day of March then instant. The first of the said six bonds became due and payable on the 25th of March, 1818; the second, in March, 1819; the third, in March, 1820; the fourth, in March, 1821; the fifth, in March, 1822; and the last one, in March, 1823. To secure the payment of the monies due on these bonds, Howell on the same day executed to Whitall a mortgage, whereby he granted and confirmed unto him the said Whitall, his heirs and assigns, all that part of Hog Island, in the river Delaware, contained in certain boundaries, in the said mortgage particularly specified.

The first bond was paid and discharged by Howell. In October, 1817, Whitall assigned the *second* bond to William Stevenson, one of the complainants.

In July, 1818, he assigned the *third* and *fourth* bonds to the executors of Woodruff.

In February, 1819, he assigned the *fifth* and *sixth* bonds (being the *two last*) to John Black, the defendant, and at the same time assigned to him the mortgage, which until that time had remained in his possession.

In February, 1823, John Black, in the name of Samuel Whitall, but for his own use, caused a judgment to be entered up on one of the bonds thus assigned to him, in the court of common pleas of the county of Delaware, and state of Pennsylvania ; upon which an execution issued in due form of law. By virtue of this execution the mortgaged premises, (or the right of Howell therein,) were levied on, and in October, 1823, they were sold at sheriff's sale, and purchased by John Black, for the sum of one dollar.

It appears that Black attended the sale in person, and bid for the property. One of the articles of sale was as follows : " The foregoing described property is sold subject to the payment of a mortgage from Saml. L. Howell to Samuel Whitall, dated 22d March, 1817, and recorded in Delaware county, in Mortgage book D, page 27," &c. After Black had made his bid, and before the property was struck off, the sheriff was induced, at the instance of E. D. Woodruff, one of the executors of A. D. Woodruff, deceased, to add the following words to the condition above recited : "*And the several bonds secured under the said mortgage.*" Against this addition or alteration, Black objected at the time. He nevertheless completed the purchase, by permitting the property to be struck off to him, and signed the articles of sale, protesting however against the alteration of the conditions, and declaring publicly that he would never pay the bonds.

The sheriff, who was examined as a witness, states, that considerable altercation took place ; that Black refused to sign the agreement annexed to the conditions of sale, upon any terms other than those which had been read, and upon which he bid for the property. The sheriff told Black, he did not consider him responsible any further than the conditions bound him at the time of his making the bid ; and as to the alteration made at the suggestion of Mr. Woodruff, that Mr. Black and Mr. Woodruff must

settle it between themselves. Black also declared, that if any of the persons interested in the property would come forward and bid for it, it should be again set up for sale.

It further appears, that Black received the sheriff's deed, and went into possession under it, and has since that time been in the receipt of the rents and profits.

The object of the complainants' bill is to charge Black, the defendant, personally and specifically with the payment of the bond assigned to Stevenson, and the two bonds assigned to the executors of Woodruff. The case was argued by

*G. D. Wall,* for the complainants;

*G. Wood,* for the defendant.

Cases cited:—4 *Cow. R.* 278 ; 1 *Paine C. C. R.* 535 ; 2 *Gallis. R.* 154 ; 5 *Wheat. R.* 257 ; 3 *Pow. M.* 908 ; 5 *Cow. R.* 202 ; 3 *John. C. R.* 302, 464, 467 ; 11 *John. R.* 534 ; 4 *Pick. R.* 131 ; 2 *John. Ca.* 441 ; 2 *Wash. R.* 233, 255 ; 12 *Mass. R.* 26, 30 ; 2 *John. R.* 595, 612 ; 2 *Ves. R.* 692, 765 ; 1 *Ves. R.* 122 ; 1 *Pow. M.* 345, 574 ; *Sugd.* 219–20 ; 7 *Ves. jr.* 331–7 ; 3 *Ves. jr.* 128 ; 3 *Peters' U. S. R.* 293, 305 ; *Hopk. C. R.* 239 ; *Pow. M.* 884 ; 2 *Bro. C. C.* 152 ; 3 *Atk. R.* 244.

THE CHANCELLOR. If Black be liable at all, *in personam,* it must arise out of the general principles of equity resulting from his situation as a purchaser of the equity of redemption, subject to the mortgage, and being in possession of the mortgaged premises, receiving the rents, issues and profits thereof;—or, it must spring out of some express agreement, whereby he is to be charged, distinct from his liability as a purchaser. Let us examine these grounds, and see whether they will sustain the plaintiffs in their claims.

On general principles, as held in this court, the purchaser of an equity of redemption is not personally liable for the amount of the mortgage debt. By the purchase and sale, the personal liability is not changed as between the mortgagor and mortgagee. The obligor is still answerable to the obligee on his bond, and

the obligee, or his assignee, cannot transfer the personal liability to the purchaser. As between the mortgagor and the purchaser of a simple equity of redemption, where the mortgage money constitutes, in fact, a part of the actual consideration of the purchase, the mortgagor has a just right to be indemnified by the purchaser against all personal liability on the bond. The uniform language of a court of equity is, that where the purchaser is in possession, and receives the rents and profits, that there is raised upon his conscience, independently of any contract, an obligation to indemnify the vendor against the personal obligation to pay the mortgage money ; for having become owner of the estate, he must be supposed to intend to indemnify the vendor against the mortgage : *Waring* v. *Ward,* 7 *Ves.* 337 ; *Tweddell* v. *Tweddell,* 1 *Bro. C. C.* 152.

In this case, Black is the purchaser of the equity of redemption at sheriff's sale. He also held two of the original bonds, by assignment from Whitall. On one of these bonds a judgment had been entered up, and his purchase was under an execution on this judgment. He is also the assignee of the mortgage. As it regards that part of the mortgage debt due from Howell to Black, it is extinguished by the purchase. Black purchased the equity of redemption for one dollar. Strictly speaking, the debt remains : but if, as holder of the bonds, he were to resort to his suit at law against Howell, the obligor, for the recovery of the money ; it is manifest that as purchaser, and bound to indemnify the mortgagor, he might be immediately prosecuted by the mortgagor and the money recovered back again : *Tice* v. *Annin,* 2 *John. C. R.* 129. This, as the court said in that case, would be an idle and absurd proceeding ; and therefore there seems to be no other alternative, than to consider the debt as extinguished in the hands of the purchaser.

But the controversy here is not between the mortgagor and the purchaser. The mortgagor has not been disturbed, nor is he called on to pay the bonds. William Stevenson, one of the complainants, is the holder of the second bond, by assignment from Whitall ; and Woodruff holds the third and fourth bonds, also by assignment from Whitall. By virtue of these assignments they claim to have an interest in the mortgage ; and insist that

Whitall, after he made the assignments to them, was, as holder of the mortgage, a trustee for them respectively: that consequently they have an equitable interest in the mortgage, and are entitled to be paid. And they further insist, that at the time of the assignment of the mortgage to Black, he had full notice that the three bonds in the hands of the complainants were unsatisfied; and even if he had no notice, yet in equity they have a lien on the mortgage for the satisfaction of their claims. There is no evidence whatever, of any direct notice to Black, that these bonds were outstanding; much less, that they were to be considered as attached to the mortgage. The mortgage, so far from being assigned to the holders of these bonds, was left in the hands of the original mortgagee; and the claim of the plaintiffs upon it, if they have any, is purely an equitable claim.

It is a general rule, that where there are a bond and mortgage, the assignment of the bond operates as an assignment of the mortgage. The bond is the principal, the mortgage is the incident. There are some exceptions to this rule, not necessary now to be noticed. I think the principle will well apply to the case before the court. When Whitall assigned to Stevenson the second bond, retaining the mortgage himself, Stevenson became equitably interested in the mortgage to the amount of his debt or bond; and Whitall, holding the mortgage, was a trustee for Stevenson, *pro tanto*. And so, in like manner, he became a trustee for the executors of Woodruff to the amount of their two bonds. But what rights are conferred by this equitable interest in the mortgage? Had Stevenson and Woodruff any claim whatever against Whitall, personally, (while he held the mortgage,) growing out of the transfer of the bonds? I conceive not. Their claim was upon the mortgage, or the estate bound by the mortgage, and that only. Is, then, Black placed, in any sense, in a different situation as assignee of the mortgage? His rights and liabilities are the same, and not different. He stands, *quoad hoc*, in the shoes of Whitall. Have they, then, any claim against Black personally, growing out of his situation as purchaser of the equity of redemption? We have seen that by such purchase his own claim was extinguished; but did he thereby make the whole mortgage debt his own, and become *personally liable* to

the mortgagee, or his assigns? I am not able to perceive how such a result is to spring out of the transaction. The claim is upon the estate, not upon the purchaser; and the claim remains, no matter in whose hands the estate may be.

The complainants have not, then, as I apprehend, any such rights against the defendant, growing out of general principles of equity, independent of any special contract, as are set up in their bill. If the suit can be maintained at all, it must be on the ground of the alleged contract entered into at the time of the sheriff's sale. This remains to be examined.

Black certainly was not bound by his bid after the alteration made in the conditions of sale, even if he were before. He might have withdrawn his bid, if he had chosen, and avoided all this difficulty. But he was not bound to do so. He was the real plaintiff in the execution, and of course interested in the sale of the property. It is clear, from the evidence, that Black did not intend to subject himself personally to the payment of the bonds; and such was the understanding of the sheriff. The alteration was made at the instance of Woodruff, not of the sheriff; and the sheriff told Black, before the purchase, that he did not consider him liable, and that he and Woodruff could settle the matter between themselves. But whatever may have been the intention of the sheriff, he was not justified in imposing terms on the purchaser different from those imposed by the law. He was the officer of the law, and as such, bound to sell according to the direction of the law, and not the direction of any interested person. It would be strange, indeed, if it were otherwise. It would be in the power of a sheriff to embarrass, if not wholly defeat, any sale, by the imposition of terms such as the law will not warrant. It is the duty of the sheriff to sell the property according to the exigency of the writ. If he undertake, by any conditions of sale, to vary the relative position of parties, and to create liabilities which the law does not impose, he exceeds his authority, and the party is not bound. What was the sheriff required to sell? Only Howell's right to the property—his equity of redemption. If the purchaser became liable to pay the bonds, a condition of sale to that effect was unnecessary. If there was no such liability, surely it cannot be permitted to the sheriff

to create one at his pleasure, or the pleasure of some person more interested. If he can create one, he can create more, and there would be no limit to his power.

I am clearly of opinion, that there was no new contract created by the additional terms of sale, in favour of these complainants. The property was sold subject to the incumbrance, whatever that might be, in the same way that other property similarly situated, is always sold. The sheriff could only sell and convey the right of Howell, the mortgagor, which was the right to redeem. That was the right purchased by Black, subject to all proper equities; and these are to be ascertained by the known and settled principles of equity, and not by the terms which a sheriff or creditor may, without authority, choose to impose.

But taking up the subject in another point of view, and considering the alteration of the conditions of sale properly made, and Black, the defendant, bound by it, does it amount to a special personal contract to pay the money due on the bonds to these complainants? The original articles stipulated that the property would be sold subject to the payment of the mortgage from Howell to Whitall. The addition was, "and the several bonds secured under the mortgage." Does this amount to a special contract with the complainants, so as personally to bind Black for the payment of the money? The sheriff was a public officer, and, strictly speaking, not the agent of any one; or if of any one, it must be of the defendant in execution, whose property he sells, rather than of third persons. May not, then, this contract be considered as enuring to the benefit of Howell, for the purpose of indemnifying him against his personal liability on the bonds? And if so, is there any new duty imposed on the purchaser? Taking the property subject to the incumbrance, equity imposes on him the duty of indemnifying the obligor against personal responsibility; and that is all this contract imports, if considered as made for the benefit of the obligor.

Again, if this is to be considered as a personal undertaking by Black, in behalf of these complainants, to pay the money due on the bonds, the right of coming into this court for relief may well be questioned : such contract can as well be enforced in a court of common law.

44

July, 1831.        What remedy the party complainant may be entitled to else-
                where, or upon other grounds, it is not for the court to determine.
Stevenson &
  Woodruff     It is sufficient to say, at this time, that the relief sought for at
     v.        the hands of this court, cannot be granted; and the bill must
   Black.
                therefore be dismissed, with costs.

   Bill dismissed.